# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> JOHNNIE MATHIS, Realtor, ) <br> ) <br>   and ) <br> ) <br> JOHNNIE MATHIS ) <br> ) <br>       Plaintiffs, ) <br>   vs. ) <br> ) <br> MR. PROPERTY, INC., a Nevada Corporation, ) <br> ) <br>      Defendant. ) <br> _____ ) | Case No.: 2:14-cv-00245-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion to Dismiss (ECF No. 12) filed by Defendant Mr. Property, Inc. ("Defendant"), which was filed in the alternative as a Motion for Summary Judgment (ECF No. 13). Plaintiff Johnnie Mathis ("Plaintiff") filed a Response (ECF No. 17), and Defendant filed a Reply (ECF No. 21). For the reasons discussed below, Defendant's motions are **DENIED**.

## I.   BACKGROUND

This case arises out of an alleged violation by Defendant of the Section 8 Tenant-Based Housing Choice Voucher Program ("Section 8"). "Under Section 8, the United States Department of Housing and Urban Development (HUD) enters into annual contribution contracts with public housing agencies, including the Southern Nevada Regional Housing Authority (SNRHA)." (Compl. ¶ 7, ECF No. 4). Plaintiff alleges that on May 14, 2013 he entered into a lease agreement with Defendant to lease Defendant's premises for $1,195.00 per month. (*Id.* ¶ 10). Three days later, on May 17, 2013, Defendant agreed to a "Reduction of Rent Acknowledgement with SNRHA to reduce the rent by $178.00 from $1,195.00 to

$1,017.00 per month." (*Id.* ¶ 11).  Defendant subsequently entered into a Housing Assistance

Payments Contract ("HAP Contract") with SNRHA that included the terms of SNRHA's

payment assistance to Defendant on behalf of Plaintiff under Section 8. (*Id.* ¶¶ 8, 12).

Plaintiff alleges that on the day he was set to move in, May 29, 2013, Defendant

required Plaintiff to sign a new lease renting the premises for the reduced amount of $1,017.00

per month. (*Id.* ¶ 13).  This second lease, however, also included a $150 pool maintenance fee

that was not included in the May 14 lease. (*Id.*).  Plaintiff further alleges that by not properly

informing SNRHA that it was charging an additional pool maintenance fee not originally

agreed to in the HAP Contract, Defendant misrepresented the amount of rent it was collecting

from Plaintiff to SNRHA in violation of the HAP Contract. (*Id.* ¶ 42–45).

Several months later, Plaintiff "stopped paying pool service fees to [Defendant] in

October 2013 after a caseworker for SNRHA advised him that the pool service fees[1] were

illegal side payments." (*Id.* ¶ 28).  Following his failure to submit these payments, "Las Vegas

Justice Court ordered summary eviction against Mathis on January 7, 2014" and Plaintiff

"vacated the premises on or about January 10, 2014, leaving personal property behind." (*Id.* ¶¶

32–33).  "On or about January 21, 2014, [Plaintiff] discovered that the premises had been

burglarized and that the front door was wide open without a lock," resulting in a loss of

$4,238.95 in personal property. (*Id.* ¶¶ 35, 37).

Subsequently, on February 14, 2014 Plaintiff initiated the present action. (Mot. to

Proceed IFP, ECF No. 2).  Plaintiff alleges two causes of action against Defendant in his

Complaint: violation of the False Claims Act ("FCA") for the collection of unlawful side

payments and violation of Nevada Revised Statutes § 118A.460 for failure to provide safe

storage of his personal property following eviction. (Compl. ¶¶ 38–53, ECF No. 4).

---

[1] The parties use the term "pool maintenance fee" and "pool service fee" interchangeably to refer to the same
$150 monthly fee.

1

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B.   Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323– 24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing

party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  DISCUSSION

### A.  Motion to Dismiss

In its motion to dismiss, Defendant contends that Plaintiff's Complaint fails to sufficiently plead either his FCA or his failure to provide safe storage claim. (Mot. to Dismiss 6:5–13, 9:8–25, ECF No. 12).  The Court disagrees.

#### 1.  False Claims Act

The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" from the United States Government. 31 U.S.C. § 3729(a)(1).  In the Ninth Circuit, to assert a claim under the False Claims Act, a plaintiff must sufficiently allege: "(1) a false statement or fraudulent course of conduct, (2)

made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

### a.  A false statement or fraudulent course of conduct

Regarding the first element, a fraudulent course of conduct can occur "where a party merely falsely certifies compliance with a statute or regulation as a condition to government payment." *Id.* at 1171.  "The Housing Choice Voucher Program Guidebook published by HUD defines 'fraud' and 'abuse' in the Section 8 Program as: a single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, omission, or concealment of a substantive fact." *U.S. ex rel Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007). "Side-payments" or "side-rent"—payments charged by the owner in addition to rent, including additional payments for maintenance, would violate the HAP Contract and constitute fraud under the FCA. *See id.* at 1188; (HAP Contract, Ex. A to Resp. at 9, ECF No. 17).

Here, Defendant argues that its employee, Andrea Richards, spoke with Luis Mendoza at SNRHA during the Section 8 application process and Mendoza advised Richards that "pool maintenance fees were not considered 'rent', and therefore, should not be included in the rental amount represented to the Department of Housing and Urban Development." (Richards Aff. ¶ 3, ECF No. 14).  Defendant also argues that Richards spoke with Malandria Watson—a supervisor at the SNRHA—and was again told pool maintenance was not considered rent. (*Id.* ¶ 4).  Defendant states it provided Watson with a revised lease agreement, asking whether the pool service fee would be permitted under the terms of the application and SNRHA approved the fee. (Mot. to Dismiss 2:25–27, ECF No. 12).

Plaintiff counters that "Part C, paragraph 5, of the HAP [Contract] and federal law prohibited [Defendant] from charging additional rent," where rent is defined as "payment for all housing services, maintenance, equipment, and utilities to be provided by the owner without

1   additional charge to the tenant, in accordance with the HAP contract and lease." (Compl. ¶¶

2   17–18, ECF No. 4).  Plaintiff alleges that because the HAP Contract did not contain any

3   provision where Defendant and SNRHA agreed to the charging of pool maintenance fees to

4   Plaintiff, the pool maintenance fee was an illegal side payment. (*Id.* ¶ 43).  Plaintiff further

5   alleges that Defendant agreed to a reduction in rent with SNRHA and then later added the pool

6   maintenance fee, despite the fact that under the "Reduction of Rent Acknowledgement,"

7   Defendant "agreed that 'no additional rent is to be collected' from Plaintiff." (*Id.* ¶¶ 11, 13, 23).

8        The charging of additional maintenance fees not included in the HAP Contract may be

9   considered side-payments and a fraudulent course of conduct under the FCA. *See Coleman v.*

10   *Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (charging of an additional $60 per

11   month for water usage was considered a side-payment when not included in the HAP Contract

12   and therefore a FCA violation); *Reynolds*, 564 F. Supp. 2d at 1187 (charging of an additional

13   $30 per month for landscape maintenance services could be an illegal side-payment).  Because

14   Plaintiff alleges the HAP Contract did not contain any provision related to the payment of pool

15   service fees, the Court can reasonably infer that SNRHA plausibly did not agree to the pool

16   maintenance fee, and it was therefore an improper side-payment.  Therefore, Plaintiff has

17   sufficiently alleged that the charging of the pool maintenance fee was a fraudulent course of

18   conduct.  This pleading satisfies the first element of the FCA claim.

19        **b.  Made with scienter**

20        Regarding the second element, the false statement or fraudulent course of conduct must

21   be made with scienter, "i.e., with knowledge of the falsity and with intent to deceive." *Univ. of*

22   *Phoenix*, 461 F.3d at 1172.  Scienter is "the knowing presentation of what is known to be

23   false." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (citing *United*

24   *States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991)).

25   The False Claims Act defines "knowing" and "knowingly" as having actual knowledge of the

information, or acting in either deliberate ignorance to or reckless disregard for the information's truth or falsity. 31 U.S.C. § 3729(b) (2009).  Defendant must make "a palpably false statement, known to be a lie when it is made . . . to be found liable under the False Claims Act." *Univ. of Phoenix*, 461 F.3d at 1172.

Here, Defendant claims SNRHA advised Defendant that pool maintenance was not considered rent, but rather a "luxury" expense. (Mot. to Dismiss 2:15–27, 8:19, ECF No. 12); (Richards Aff. ¶¶ 3–4, ECF No. 14).  However, Plaintiff alleges that under the HAP Contract between SNRHA and Defendant, Defendant may not charge additional rent, defining rent to include maintenance fees. (Compl. ¶¶ 42–44, ECF No. 4).  Plaintiff claims Defendant entered into this agreement and knowingly disregarded this provision. (*Id.* ¶ 29).  Furthermore, the Court can infer from the allegation that a "caseworker for SNRHA advised [Plaintiff] that the pool service fees were illegal side payments," (*Id.* ¶ 28), that Defendant did not inform SNRHA of the changes to the Lease Agreement nor did SNRHA agree to the changes, which constitutes a violation by omission of the HAP Contract. (HAP Contract, Ex. A to Resp. at 3, ECF No. 17). Defendant's affidavit to the contrary does not show that this claim is implausible on its face or that Defendant is entitled to dismissal of Plaintiff's claim.  Accordingly, Plaintiff has alleged sufficient facts to plausibly infer that Defendant knowingly violated the HAP Contract, resulting in a violation of the FCA. *See Reynolds*, 564 F. Supp. 2d at 1188.

### c.  That was material

Regarding the third element, the false statement or fraudulent course of conduct "must be material to the government's decision to pay out moneys to the claimant." *Univ. of Phoenix*, 461 F.3d at 1172.  Stated another way, there must be a causal relationship between the fraudulent conduct and the government's loss. *See id.*

Here, Defendant argues "the amount was not material to the government's decision to make the subsidy payments" but does not elaborate on why Defendant believes this to be the

case. (Mot. to Dismiss 7:21–22, ECF No. 12).  Conversely, Plaintiff asserts that the HAP

Contract prohibited the charging of additional rent, (Compl. ¶ 42, ECF No. 4), and that SNRHA

would have terminated the HAP Contract had it known about the Defendant's pool

maintenance fee. (*Id.* ¶ 47).  Accordingly, any additional charge, including the pool

maintenance fee, was material to SNRHA and the government's decision to pay out moneys.

Plaintiff has, therefore, sufficiently alleged materiality, the third element of the FCA claim.

### d.  Causing the government to pay out money

Regarding the fourth element, the government must have paid out moneys in order to

have a claim under the FCA. *Univ. of Phoenix*, 461 F.3d at 1173.  Here, Plaintiff alleges that

SNRHA receives funds from HUD, a federal agency, pursuant to Section 8 and uses these

funds to subsidize rent payments for qualified applicants. (Compl. ¶¶ 6–8, ECF No. 4).

Plaintiff alleges Defendant received these Section 8 funds from HUD through SNRHA on

behalf of Plaintiff, thereby receiving government moneys. (*Id.* ¶¶ 7, 44, 46).  Plaintiff has,

therefore, sufficiently alleged the fourth element of the FCA claim.  Accordingly, because

Plaintiff has sufficiently pled all of the elements for his FCA claim, Defendant's motion to

dismiss is denied on this claim.

### 2.  Failure to Provide Safe Storage for Personal Property After Eviction

Under Nevada law, a landlord must "reasonably provide for the safe storage of the

property for 30 days" after eviction. Nev. Rev. Stat. § 118A.460(1)(a).  The landlord is liable to

the tenant for the landlord's "negligent or wrongful acts in storing the property." *Id.*

Defendant argues that on "January 11, 2014 the Constable carried out the court's

eviction order as accompanied by a locksmith.  The locksmith changed every lock at the subject

property." (Mot. to Dismiss 9:15–17, ECF No. 12).  Defendant also provides an invoice for the

rekeying of the locks. (Invoice, Ex. A. to Mot. to Dismiss, ECF No. 12).  However, Plaintiff

alleges that ten days later, "[o]n or about January 21, 2014, [Plaintiff] discovered that the

premises had been burglarized and that the front door was wide open without a lock." (Compl. ¶ 35, ECF No. 4).  Plaintiff subsequently filed a police report with Las Vegas Metro Police Department and alleges a loss of $4,238.95 in personal property due to the burglary. (*Id.* ¶¶ 36– 37).

Plaintiff has sufficiently pled that Defendant had a duty under NRS § 118A.460 to keep Plaintiff's personal property safe for 30 days and that Defendant breached this duty because Plaintiff found the front door without a lock.  Defendant's alleged failure to maintain a proper lock on the front door may have caused Plaintiff's loss of personal property.  Again, Defendant's proffered evidence to the contrary does not show that this claim is implausible on its face or that Defendant is entitled to dismissal of Plaintiff's claim.  Accordingly, Defendant's motion to dismiss on the Failure to Provide Safe Storage claim is denied.

### B.   Motion for Summary Judgment

Defendant argues alternatively that the evidence it presents shows it was not deliberately ignorant and did not recklessly disregard the truth; therefore, it is entitled to summary judgment. (MSJ 10:4–7, ECF No. 13).  However, Defendant has prematurely filed this motion before a scheduling order was entered or substantial discovery conducted. S*ee Williams v. Yuan Chen*, No. S-10-1292 CKD P, 2011 WL 4354533, at *3 (E.D. Cal. Sept. 16, 2011) ("Here, defendant is entitled to an opportunity to pursue discovery before responding to a summary judgment motion.  Defendant has not yet filed an answer, and a discovery order has not issued. Thus, defendant has not had a meaningful opportunity to conduct discovery.").  Although Rule 56 allows a motion for summary judgment to be filed "at any time," Rule 56 also allows the court to issue an order, as is just, denying the motion or ordering a continuance for the opposing party to pursue discovery. Fed. R. Civ. P. 56.  Furthermore, at this point, there appears to be genuine issues of material fact concerning whether Defendant knew the pool maintenance fee was in violation of the HAP Contract and whether SNRHA agreed to the pool maintenance fee

as a change to the HAP Contract.  Also, there appears to be a genuine issue of material fact concerning whether Defendant properly secured Plaintiff's property following eviction. Accordingly, Defendants motion for summary judgment is denied without prejudice.

**IV.   <u>CONCLUSION</u>**

　　　**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 12), is **DENIED**.

　　　**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 13), is **DENIED without prejudice**.

　　　**DATED** this 10th day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court